**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**KEITH RICHARDSON,**

                   **Plaintiff,**              **6:11-cv-1007**
                                                   **(GLS/ATB)**

        **v.**

**NEW YORK STATE OFFICE OF**
**MENTAL HEALTH, CENTRAL**
**NEW YORK PSYCHIATRIC**
**CENTER et al.,**

                   **Defendants.**

_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Bosman Law Office            AJ BOSMAN, ESQ.
6599 Martin Street
Rome, NY 13440

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN    CHRISTOPHER W. HALL
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Keith Richardson commenced this action against defendants[1] New York State Office of Mental Health, Central New York Psychiatric Center ("the Center"), Donald Sawyer, Maureen Bosco, Patricia Bardo, Mary Carli, William Moorehead, Corey Conley, and Christine Mandigo, alleging violations of Title VII,[2] 42 U.S.C. §§ 1981 and 1983, the New York State Human Rights Law (NYSHRL),[3] and state tort law. (Am. Compl., Dkt. No. 12.) Pending is defendants' motion for summary judgment. (Dkt. No. 65.) For the reasons that follow, the motion is granted in part and denied in part.

## II. Background[4]

### A. Facts

Now retired, Richardson, an African-American male, began his employment with the Center in January 1982 as a Security Hospital Treatment Assistant (SHTA). (Defs.' Statement of Material Facts (SMF) ¶¶ 2-3, Dkt. No. 65, Attach. 1.) Throughout his tenure at the Center,

---

[1] Richardson also names yet to be discovered J[ohn] and Jane Does in his amended complaint. (Am. Compl. at 1, Dkt. No. 12.)

[2] *See* 42 U.S.C. §§ 2000e-2000e-17.

[3] *See* N.Y. Exec. Law §§ 290-301.

[4] Unless otherwise noted, the facts are not in dispute.

Richardson's performance evaluations rated his work between average and excellent.  (*See generally* Dkt. No. 76, Attach. 1 at 1-76.)  Additionally, Richardson received at least two promotions: first, in 1999, to Senior SHTA, and second, in February 2006, to Provisional Supervising SHTA. (Defs.' SMF ¶¶ 4, 181-82.)

    1.    *Richardson's Demotion and the Center's Failure to Promote*

Richardson remained in his position as a Provisional Supervising SHTA until his position was revoked in 2009.  (*Id.* ¶ 5.)  Although Richardson was informed of his demotion in August 2009, it did not take effect until September 2009, approximately one month before his significant other, Christine Bergerson,[5] was successful in her lawsuit against the Center.  (*Id.* ¶¶ 5, 7; Dkt. No. 65, Attach. 3 at 167-68; Dkt. No. 76, Attach. 3 at 2-9.)  That lawsuit, which resulted in a damages award of $580,000, was premised on, among other things, the Center's unlawful termination of Bergerson, who is Caucasian, because of her gender and affiliation with "an African-American male"—Richardson.  (Am. Compl. ¶ 11; Defs.' SMF ¶ 90; Dkt. No. 76, Attach. 3 at 2-9.)

Richardson was informed that his position was revoked because Civil

---

[5] Bergerson is also referred to as Christine Fuller.  (*See, e.g.*, Am. Compl. ¶ 7.)

Service announced an exam for the position, and that, to be considered for the new, permanent position, he needed to take the Civil Service exam, and be "reachable"[6] when Civil Service establishes a canvas. (Defs.' SMF ¶ 9.) At the same time that Richardson's position was revoked, a Caucasian employee, Nicholas Guglielmo, also had his Provisional Supervising SHTA position revoked. (*Id.* ¶ 11; Dkt. No. 76, Attach. 2 at 3.) Richardson took the Civil Service exam, and earned a score of ninety. (Defs.' SMF ¶¶ 17, 20.) Five other candidates, including Guglielmo, scored ninety-five on the exam. (*Id.* ¶¶ 19, 21.)

Guglielmo was automatically promoted to the permanent position on August 27, 2009, without being required to interview. (*Id.* ¶¶ 11, 21-22.) On September 24, 2009—one day after Richardson's position was officially revoked—interviews were scheduled for the permanent Supervising SHTA position, but Richardson was not scheduled for an interview. (Dkt. No. 76, Attach. 2 at 2.) In October 2009, another Caucasian employee, John

_____

[6] The parties dispute how an individual becomes reachable: defendants maintain that a candidate must be among the top three scoring candidates on the exam, while Richardson contends that a candidate need only have placed in the top three scores, even if there are several top scoring candidates. (Defs.' SMF ¶ 10; Dkt. No. 78 ¶ 10.) The parties also dispute when Richardson became reachable: defendants claim that Richardson's position was officially revoked in September 2009 because he was not yet reachable, but Richardson maintains that he was reachable on the eligibility list before the effective date of the revocation of his provisional position, and should have been eligible for an automatic appointment. (Defs.' SMF ¶¶ 8, 23; Dkt. No. 78 ¶¶ 8, 23.)

(Jamie) Temple, who also scored a ninety-five on the exam, was interviewed for the Supervising SHTA position, along with Glenn Block, an employee who, on October 2, 2009, was subpoenaed as a witness for Bergersen in her lawsuit against the Center. (*Id.* at 16-19; Am. Compl. ¶ 10; Defs.' SMF ¶¶ 24, 25.) Temple was offered the permanent Supervising SHTA position on October 8, 2009. (Defs.' SMF ¶ 27.) Interview notes, however, indicate that Temple, who never before served in the position, interviewed poorly. (Dkt. No. 65, Attach. 5 at 35; Dkt. No. 76, Attach. 2 at 5-6.) Althouh disputed, Richardson was not interviewed for the position because he was not yet reachable. (Defs.' SMF ¶ 26; Dkt. No. 78 ¶ 26.)

Finally, in February or March 2010, Richardson received a canvas letter for another permanent supervising position, for which he interviewed in March. (Defs.' SMF ¶¶ 28, 29.) Nine other candidates interviewed for this position, all of whom were interviewed by the same panel: Bosco, Director of Inpatient Operations, Conley, Chief of Security, and Moorehead, one of Richardson's direct supervisors.[7] (*Id.* ¶¶ 30-31, 35, 37, 41.) In

_____

[7] Richardson disputes that Bosco participated in the interview of candidate Robert Beck. (Dkt. No. 78 ¶ 31; Dkt. No. 76, Attach. 4 at 77.)

addition to Richardson, Kenneth Paparella and Robert Beck were among the nine candidates interviewed.  (*Id.* ¶¶ 72, 76.)  Paparella was another employee who, on October 2, 2009, was subpoenaed as a witness for Bergersen in her lawsuit against the Center, (Dkt. No. 76, Attach. 2 at 16-19), while Beck testified on behalf of the Center, (Dkt. No. 76, Attach. 2 at 36-58).  Although each of the candidates had some prior supervisory experience, Richardson was the only candidate who previously held the position.  (Defs.' SMF ¶ 32; Dkt. No. 69 at 38, 73-74.)

Richardson interviewed for the position in March 2010, but the parties dispute the quality of his interview.  (Defs.' SMF ¶ 42.)  According to defendants, Richardson dressed too casually, did not thoroughly answer all of the questions, indicated that he was unsure if he wanted the position, and was the only candidate not to submit a resume.  (*Id.* ¶¶ 42-46, 49, 50, 52-58, 62, 64, 67-68.)  Richardson, on the other hand, explained that he dressed appropriately, answered all of the questions that were asked to him, never suggested that he did not want the position, and did not submit a resume because he was out sick prior to the interview and did not know that others were doing so.  (Dkt. No. 72 at 19-20; Dkt. No. 73 at 40-42; Dkt. No. 77 ¶ 8; Dkt. No. 78 ¶ 53.)  Moorehead's notes from the interview

indicate that Richardson had "a good interview."  (Dkt. No. 72 at 19; Dkt. No. 76, Attach. 3 at 16.)

Ultimately, however, three Caucasian employees, Robert Beck,[8] Darryl Barr, and Bill Dehimer, were recommended to Donald Sawyer, the Executive Director, for promotion.  (Am. Compl. ¶¶ 12, 14, 16; Defs.' SMF ¶ 76; Dkt. No. 75 at 1, 6.)  Richardson, however, was not promoted.  (Defs.' SMF ¶ 76.)  Beck, Barr, Dehimer, and Richardson each earned the same score on the Civil Service exam.  (*Id.* ¶¶ 20, 77.)

### 2. *Drug Investigation*

On August 2, 2010, certain staff members reported suspicions about drug use at the Center.  (*Id.* ¶ 130; Dkt. No. 69 at 97-100.)  Richardson was implicated after a staff member expressed concerns about a conversation she witnessed between Richardson and a patient.  (Defs.' SMF ¶ 131; Dkt. No. 69 at 97-100.)  An investigation commenced, and the New York State Police were called in to investigate with the canine unit.  (Defs.' SMF ¶¶ 133, 135; Dkt. No. 76, Attach. 3 at 32-39.)  Ultimately, the investigation culminated with the discovery that another employee was responsible for

---

[8] Notably, while most of the candidates were interviewed in March 2010, (Dkt. No. 76, Attach. 4 at 75), Beck initially cancelled his interview and declined the position, (Am. Compl. ¶ 14; Dkt. No. 76, Attach. 3 at 14).  Nevertheless, Beck ultimately interviewed in May 2010, and was appointed to the position.  (Dkt. No. 76, Attach. 3 at 20; Dkt. No. 76, Attach. 4 at 77.)

bringing in contraband, and that employee had falsely implicated

Richardson.  (Defs.' SMF ¶ 149.)

### 3.    EEOC Complaint and Richardson's Interrogation

On August 19, 2010, Richardson went to the Affirmative Action Office

to provide information regarding the Center's failure to promote him, and to

explain that he believed the Center's failure to promote him was due to

racial discrimination.  (Dkt. No. 76, Attach. 3 at 28-29.)  Richardson claims

that, at that meeting, he stated that he did not want to file a complaint

because he "already went to the [Equal Employment Opportunity

Commission (EEOC)]."  (Dkt. No. 73 at 129.)  On September 13, 2010,

Richardson filed a complaint with the EEOC.  (Defs.' SMF ¶ 110; Dkt. No.

76, Attach. 3 at 63.)

On September 19, 2010, Richardson was interrogated by Bosco,

Bardo, Associate Personnel Administrator, and Carli, Director of Human

Resources.  (Defs.' SMF ¶¶ 123-26; Dkt. No. 76, Attach. 3 at 53; Dkt. No.

76, Attach. 4 at 5.)  Defendants claim that the interrogation related to an

August 12, 2010 fight that broke out among patients in the yard, and

subsequent complaints from staff claiming that Richardson failed to

intervene, thus jeopardizing the safety of patients and staff.  (Defs.' SMF ¶¶

116-20.)  At the interrogation, Richardson was questioned about the fight and why he did not intervene, but also about various other topics, including whether he informs patients that they are being discharged, whether he ever provided a patient with a knife, and his relationships with certain patients.  (Dkt. No. 76, Attach. 4 at 8-23, 30, 32-33, 41, 43-44, 51-52.)  Notably, Richardson was questioned about staff members bringing in contraband to the facility, (Dkt. No. 76, Attach. 4 at 32-33), even though Bosco later stated that "[b]y the time that [she] was part of the panel to interrogate [Richardson], [she] knew that [he] was not involved with that," (Dkt. No. 69 at 133-34), and he was also questioned about whether a patient ever gave him a back rub, even though Bosco stated that she "thought the back rub occurred at another time," "was a whole different instance," and was "not clear why that[ question was] included" in the interrogation, (*id.* at 138-39; Dkt. No. 76, Attach. 4 at 51-52).  After the interrogation, Bosco recommended that Richardson receive a formal written counseling for his failure to respond to the patient fight, and that he "should also be counseled for his apparent inappropriate boundary issues with patients."  (Defs.' SMF ¶ 128; Dkt. No. 76, Attach. 3 at 58.)

**B.** **Procedural History**

Richardson commenced this action on August 23, 2011. (*See generally* Compl., Dkt. No. 1.) Defendants filed a pre-answer motion to dismiss, (Dkt. No. 20), which was denied, (Dkt. No. 27). Following joinder of issue, (Dkt. No. 28), defendants moved for summary judgment, (Dkt. No. 65). That motion is currently pending before the court.

## III. **Standard of Review**

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. **Discussion**[9]

Richardson asserts nine causes of action in his amended complaint. First, in counts one, two, three, and four, Richardson claims that defendants discriminated against him on the basis of his race and on the basis of his association with a person of another race—Bergerson—when they failed to promote him after he became eligible for the permanent

---

[9] The court has limited its discussion to the arguments presented in the parties' briefs.

Supervising SHTA position, in violation of Title VII, NYSHRL, § 1981, and the First and Fourteenth Amendments, pursuant to § 1983.  (Am. Compl. ¶¶ 30-32, 33-35, 36-38, 39-41.)  Second, in counts six, seven, eight, and nine, Richardson claims that defendants retaliated against him by interrogating him after they learned that he filed a complaint with the EEOC, in violation of Title VII, NYSHRL, § 1981, and the First Amendment, pursuant to § 1983.  (*Id.* ¶¶ 46-48, 49-51, 52-54, 55-57.)  Third, in count five, Richardson brings a claim of prima facie tort against Bosco, Moorehead, Conley, and the Doe defendants.  (*Id.* ¶¶ 42-45.)  As discussed more thoroughly below, defendants seek summary judgment as to each claim.

## A.    Title VII, NYSHRL, and § 1981 Discrimination Claims

Defendants argue that Richardson's race discrimination claims pursuant to Title VII, NYSHRL, and § 1981[10] must be dismissed.  (Dkt. No. 65, Attach. 9 at 1-8, 16.)  Specifically, defendants contend that they had legitimate, nondiscriminatory reasons for not promoting Richardson to a permanent Supervising SHTA position: in 2009, he was not reachable, and

_____

[10] The analysis for these claims is the same; accordingly, they are considered together.  *See Bowen-Hooks v. City of N.Y.*, No. 10-CV-5947, 2014 WL 1330941, at *16 n.19 (E.D.N.Y. Mar. 31, 2014) (collecting cases).

in 2010, his interview was not as strong as those candidates who were promoted.  (*Id.*)  Richardson contends that he has set forth a prima facie case of discrimination, and defendants' legitimate, non-discriminatory reasons for failing to promote him are pretextual.  (Dkt. No. 79 at 5-10, 14.) The court concludes that questions of fact preclude summary judgment.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Discrimination claims under Title VII, the NYSHRL, and § 1981 are assessed using the *McDonnell Douglas* burden-shifting framework, which places upon the plaintiff the initial burden of making out a prima facie case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Bowen-Hooks v. City of N.Y.*, No. 10-CV-5947, 2014 WL 1330941, at *16 n.19 (E.D.N.Y. Mar. 31, 2014) (collecting cases).  To satisfy his initial burden, the plaintiff "'must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4)

that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'"  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

"A plaintiff's establishment of a *prima facie* case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action."  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks and citations omitted). If the defendant proffers a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

Ultimately, once the burden shifts back to the plaintiff, he must show, "without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination."  *Holcomb*, 521 F.3d at 138. The plaintiff must demonstrate "by a preponderance of the evidence that

the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). This showing may be made "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *see Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180-81 (2d Cir. 1992). However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

Here, Richardson has made out a prima facie case of discrimination. First, he is African American, (Defs.' SMF ¶ 2), and was in a relationship with a Caucasian woman, Bergersen, (*id.* ¶ 90), and therefore belongs to a protected class. *See Holcomb*, 521 F.3d at 138 (holding that "an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race"). Second, he was qualified for the position, as demonstrated by his excellent performance evaluations when he provisionally held the position. (*See generally* Dkt. No. 76, Attach. 1 at 1-77.) Third, he suffered an adverse employment

action after the Center failed to promote him to the Supervising SHTA

position once he was again eligible for the position. (Defs.' SMF ¶¶ 5, 7,

21, 27, 76, 84, 85, 87); *see Levitant v. City of N.Y. Human Res. Admin.*,

558 F. App'x 26, 29 (2d Cir. 2014) ("It is well-established that a failure to

promote is an adverse employment action." (citation omitted)). Finally, the

adverse employment action occurred under circumstances giving rise to an

inference of discriminatory intent, as other Caucasian employees, almost

all of whom, unlike Richardson, never before held the position, were

promoted; further, three of these Caucasian employees earned the same

score as Richardson on the Civil Service exam.[11] (Defs.' SMF ¶¶ 20, 21,

---

[11] The court notes that defendants rely on the "same actor defense," and argue that the court cannot impute invidious motivation on the part of defendants because they continued to employ Richardson, despite his history with drug abuse and his sporadic time and attendance problems, and in fact, twice promoted him throughout his tenure at the Center. (Dkt. No. 65, Attach. 9 at 17-20.) This argument, however, is unpersuasive. The same actor defense suggests that "where the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000). Here, defendants have not identified the "same actor" responsible for both Richardson's positive and negative employment experiences at the Center; instead, they refer to the Center generally as his employer, and note that Conley and Sawyer were responsible for one of Richardson's promotions, despite the fact that they previously stated that Sawyer delegated hiring decisions to others. (Dkt. No. 65, Attach. 9 at 7, 17-20.) This is not sufficient to establish a same actor defense. The court further notes that Richardson takes issue with defendants' detailed discussion of his history with drug abuse, and requests that the court strike from the record, pursuant to 42 U.S.C. § 290dd-2, the portions of defendants' motion referencing Richardson's history with drug abuse. (Dkt. No. 79 at 17-18.) While the court is sympathetic to Richardson, § 290dd-2, which generally requires that *records* containing information regarding a patient in a substance abuse program be kept confidential, does not, standing alone, provide authority for the court to strike portions of defendants' motion from the record. Thus, Richardson's request is denied.

27, 76, 77, 84, 85, 87).

In response, defendants have come forth with legitimate, non-discriminatory reasons for their failure to promote Richardson.  In 2009, defendants claim that they did not promote him because he was not eligible for the position, or "reachable."  (Dkt. No. 65, Attach. 3 at 1-8, 16.)  In 2010, defendants contend, Richardson's interview was not as strong as the interviews of the candidates who were promoted.  (*Id.*)

Richardson, however, has demonstrated that there are questions of fact as to whether defendants' proffered reasons are merely pretextual.[12] As an initial matter, Richardson disputes that he was not reachable in 2009.  (Dkt. No. 78 ¶¶ 8, 26.)  Further, the employee who was promoted in 2009, Guglielmo, like Richardson, previously held the Supervising SHTA position provisionally, but unlike Richardson, was Caucasian, and was automatically promoted without first being required to interview.  (Defs.' SMF ¶¶ 11, 21, 22.)  Even putting aside the dispute over whether and when Richardson was reachable, it is not clear from the record why, between the two individuals who previously held the position provisionally—Richardson and Guglielmo—Guglielmo was not required to

---

[12] The court notes that defendants did not file a reply to Richardson's opposition.

16

interview, but Richardson later was.

Moreover, in 2010, the parties dispute the quality of Richardson's interview. Although Moorehead's notes from the interview indicate that Richardson had "a good interview," (Dkt. No. 72 at 19; Dkt. No. 76, Attach. 3 at 16), defendants now claim that Richardson dressed too casually, did not thoroughly answer all of the questions, indicated that he was unsure if he wanted the position, and was the only candidate not to submit a resume, (Defs.' SMF ¶¶ 42-46, 49, 50, 52-58, 62, 64, 67-68). Richardson, however, disputes each of these critiques. (Dkt. No. 72 at 19-20; Dkt. No. 73 at 40-42; Dkt. No. 77 ¶ 8; Dkt. No. 78 ¶ 53.) Further, other evidence in the record calls defendants' credibility into question. For example, one of the Center's criticisms of Richardson's interview was that he seemed as though he did not even want the position, and even, at points, verbally indicated as such. (Defs.' SMF ¶¶ 49, 50.) Nevertheless, one of the three individuals hired for the Supervising SHTA positions in 2010 was Beck,[13] who, in March, initially canceled his interview and declined the position. (Dkt. No. 76, Attach. 3 at 14, 20; Dkt. No. 76, Attach. 4 at 77.) Finally, casting even

---

[13] Further muddying the waters, the court notes that Beck, who testified on behalf of the Center in Bergerson's trial, was promoted over Paparella, who was subpoenaed to testify against the Center in Bergerson's trial, but who nevertheless gave an "excellent" interview. (Defs.' SMF ¶¶ 72, 76; Dkt. No. 76, Attach. 2 at 16-19, 36-57.)

more doubt on whether Richardson was not promoted because of the quality of his interview, Temple, another Caucasian employee who never before held the Supervising SHTA position, was hired in October 2009, despite interview notes indicating that he interviewed poorly. (Defs.' SMF ¶ 27; Dkt. No. 65, Attach. 5 at 35; Dkt. No. 76, Attach. 2 at 5-6.)

Accordingly, Richardson has demonstrated that there are questions of fact as to whether defendants' legitimate, non-discriminatory reasons for failing to promote him are merely pretextual, and defendants' motion for summary judgment is denied on this ground.

## B. Title VII, NYSHRL, and § 1981 Retaliation Claims[14]

Richardson claims that the Center retaliated against him for filing his EEOC complaint when he was interrogated on September 20, 2010. (Am. Compl. ¶¶ 46-48, 49-51, 52-54, 55-57.) Defendants seek summary judgment on Richardson's retaliation claims because, they argue, he has failed to establish a prima facie case of retaliation. (Dkt. No. 65, Attach. 9 at 9-13.) Specifically, defendants argue that Richardson has not suffered an adverse employment action, and, even if he did, there was no causal

---

[14] "Claims of retaliation under th[e]se statutes are generally analyzed in the same way, with the same standards of liability." *Acosta v. City of N.Y.*, No. 11 Civ. 856, 2012 WL 1506954, at *8 (S.D.N.Y. Apr. 26, 2012) (internal quotation marks omitted).

connection between the adverse employment action and his protected

activity.  (*Id.*)  Richardson responds that he has carried his burden.  (Dkt.

No. 79 at 10-13.)  The court agrees with Richardson.

Title VII provides that "[i]t shall be an unlawful employment practice

for an employer to discriminate against any of his employees . . . because

[that employee] has opposed any practice made an unlawful employment

practice . . . or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing."  42

U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, a

plaintiff must show: "(1) participation in a protected activity; (2) that the

defendant knew of the protected activity; (3) an adverse employment

action; and (4) a causal connection between the protected activity and the

adverse employment action."  *McMenemy v. City of Rochester*, 241 F.3d

279, 282-83 (2d Cir. 2001).  If the plaintiff sets out a prima facie case, then

the burden of production shifts to the defendant to articulate a legitimate,

non-retaliatory rationale for its actions.  *See McDonnell Douglas*, 411 U.S.

at 802; *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991).  If the

defendant proffers a legitimate, non-retaliatory reason, the burden of

production then shifts back to the plaintiff to introduce evidence that the

defendant's reason was a pretext for retaliation.  *See McDonnell Douglas*, 411 U.S. at 804; *Johnson*, 931 F.2d at 207.  Here, it is undisputed that Richardson engaged in protected activity of which defendants were aware, but they do dispute whether Richardson suffered an adverse employment action and whether there was a causal connection between the protected activity and the adverse employment action.

First, to establish an "adverse employment action," Richardson must show "that a reasonable employee would have found the challenged action materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted); *see Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006).  Here, Richardson argues that the adverse employment action was his September 20, 2010 interrogation and investigation.  (Dkt. No. 79 at 10-13.)  Citing no authority, defendants contend that Richardson's interrogation was not an adverse employment action because he "was never disciplined following the interrogation."  (Dkt. No. 65, Attach. 9 at 12-13.)  Richardson, however, cites *Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 436 (N.D.N.Y. 2009), *abrogated on other*

*grounds by Widomski v. State Univ. of N.Y. at Orange*, 748 F.3d 471 (2d Cir. 2014), for the proposition that being investigated may constitute an adverse employment action.  (Dkt. No. 79 at 12-13.)  Indeed, in *Lee*, the court held, and this court agrees, that an investigation of an employee could constitute an adverse employment action because "[b]eing investigated by one's employer could deter a reasonable person from complaining about discrimination because investigations can be intrusive and intimidating."  *Lee*, 603 F. Supp. 2d at 436; *see also Morales v. N.Y.S. Dep't of Labor*, 865 F. Supp. 2d 220, 250-51 (N.D.N.Y. 2012) (noting that the plaintiff's email constituting "an informal complaint about employment actions taken against her" followed closely in time by a "lengthy interrogation" raised questions of fact regarding whether the defendant's actions were retaliatory), *aff'd* 530 F. App'x 13 (2d Cir. 2013).  Thus, for the purposes of establishing his prima facie case, Richardson has demonstrated that he suffered an adverse employment action.

Next, "[a] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (internal quotation

marks and citation omitted).  Nevertheless, "where 'timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'"  *Hartley v. Rubio*, 785 F. Supp. 2d 165, 182 (S.D.N.Y. 2011) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).

Here, defendants claim that the interrogation lacks a causal connection to Richardson's protected activity—meeting with the Affirmative Action Officer and filing his EEOC complaint—because the interrogation "arose from the [fight in the recreation yard] that occurred three weeks before the filing of the complaint."  (Dkt. No. 65, Attach. 9 at 13.)  As Richardson points out, however, the fight in the recreation yard occurred on August 12, 2010, (Dkt. No. 76, Attach. 3 at 42), but the first interview as part of the investigation into Richardson's conduct during the fight did not occur until August 23, 2010, (*id.* at 44), which was eleven days after the fight in the recreation yard, but only four days after Richardson met with the Affirmative Action Officer and informed her that he "went" to the EEOC, (Dkt. No. 73 at 129).  Further, Richardson was ordered to appear for the interrogation on September 16, 2010, (Dkt. No. 76, Attach. 4 at 2), which

was only one day after defendants learned that he had filed a complaint with the EEOC, (Dkt. No. 76, Attach. 3 at 61-63).  Accordingly, there are questions of fact as to whether defendants' interrogation of Richardson was retaliatory, and therefore, defendants are not entitled to summary judgment.  *See Morales*, 865 F. Supp. 2d at 250-51.

Finally, the court notes that, to the extent that defendants argue that they had a legitimate, non-retaliatory reason for interrogating Richardson—their interest in investigating the August 12, 2010 fight in the recreation yard—Richardson has, at least at this stage, established that there are questions of fact as to whether that reason is pretextual.  For instance, in his interrogation, defendants did not limit their line of questioning to the circumstances surrounding the fight.  Instead, they also questioned him about a range of other topics, including drug use in the facility and accusations that Richardson received a back rub from a patient. (Dkt. No. 76, Attach. 4 at 32-33, 51-52.)  The Center, however, had previously investigated Richardson's alleged involvement with drugs entering the facility, and, by the time of his interrogation, it had already been determined that he had no involvement.  (Dkt. No. 69 at 133-34; Dkt. No. 76, Attach. 3 at 32-39.)  Further, the back rub incident both occurred at

another time from, and was wholly unrelated to, the fight in the recreation yard.  (Dkt. No. 69 at 138-39.)  Thus, these inconsistencies cast doubt as to whether the interrogation was part of a targeted investigation into reported wrongdoing, or whether it was merely a fishing expedition.

Accordingly, there are questions of fact with respect to Richardson's retaliation claims, and defendants' motion for summary judgment is denied.

## C.    Section 1983 Claims

Defendants contend that Richardson's § 1983 claims should be dismissed because they are based on Title VII law and Richardson "does not allege [that] defendants violated any other law to support these claims." (Dkt. No. 65, Attach. 9 at 13.)  Richardson responds that his § 1983 claims must survive because they are based on violations of the United States Constitution.  (Dkt. No. 79 at 13-14.)  The court agrees with Richardson.

"A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action, such as a claim for denial of equal protection, so long as the § 1983 claim is based on a distinct violation of a constitutional right." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks and citations omitted).  Here, Richardson's third cause of action is brought pursuant to § 1983 and alleges violations of his

24

First and Fourteenth Amendment rights, and his eighth cause of action is brought pursuant to § 1983 and alleges violations of his First Amendment rights.  (Am. Compl. ¶¶ 36-38, 52-54.)  Because Richardson's amended complaint clearly bases his § 1983 claims on violations of constitutional rights, defendants' argument is unavailing.  Further, because "[t]he burden of proof and production for employment discrimination claims under Title VII, § 1981, § 1983, and the NYSHRL are identical," *Bowen-Hooks*, 2014 WL 1330941, at *16 n.19, and defendants offer no new reasons for why Richardson's § 1983 claims must be dismissed, Richardson's § 1983 claims survive for substantially the same reasons as discussed above.  *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (noting that "[plaintiff]'s equal protection claim parallels his Title VII claim.  The elements of one are generally the same as the elements of the other and the two must stand or fall together."); *see also Acosta v. City of N.Y.*, No. 11 Civ. 856, 2012 WL 1506954, at *8 (S.D.N.Y. Apr. 26, 2012).

### D.    Prima Facie Tort

Defendants also argue that Richardson's prima facie tort claim must be dismissed because Richardson has not demonstrated that their actions were intended solely to harm him. (Dkt. No. 65, Attach. 9 at 20-21.) The court agrees.

"Under New York law, there are four elements to a claim of prima facie tort: (1) an intentional infliction of harm; (2) without excuse or justification and motivated solely by malice; (3) resulting in special damages; (4) by an act that would otherwise be lawful." *Rausa v. Bd. of Educ. of the N. Syracuse Cent. Sch. Dist.*, No. 5:11-cv-1152, 2012 WL 967052, at *11 (N.D.N.Y. Mar. 21, 2012) (citing *Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996)). The Second Circuit has held that the "touchstone" of a prima facie tort claim is "disinterested malevolence," meaning that "the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990). Indeed, "where the plaintiff merely pleads intentional and malicious action, but not that the defendant's sole motivation was disinterested malevolence, the [claim] will be dismissed." *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 465-66 (E.D.N.Y. 2002) (internal quotation marks and

citations omitted); *see Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 277 (E.D.N.Y. 2009).

Here, Richardson's complaint only alleges that Bosco, Moorehead, Conley, and the Doe defendants "acted with ill will and malice towards" Richardson, (Am. Compl. ¶¶ 42-45), and he has not otherwise offered evidence demonstrating that defendants' sole intent was to harm him. Accordingly, Richardson's prima facie tort claim must be dismissed.

## E.    Qualified Immunity

Finally, defendants contend that they are entitled to qualified immunity for Richardson's §§ 1981 and 1983 claims.  (Dkt. No. 65, Attach. 9 at 21.)  Richardson argues that the outstanding questions of fact render qualified immunity inappropriate in this case.  (Dkt. No. 79 at 17.)  The court agrees with Richardson.

"A government official is entitled to qualified immunity for his actions unless his conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  *Rivers v. Fischer*, 390 F. App'x 22, 23 (2d Cir. 2010).  "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would]

27

have understood from the existing law that [his] conduct was unlawful.'"
*Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)).

Here, the legal principles governing defendants' conduct, discussed above, were well established.  However, the matter of whether it was reasonable for defendants to believe their actions met the standards set by those principles depends on whether one believes their version of the facts. That version is sharply disputed, and the matter of defendants' qualified immunity therefore cannot be resolved as a matter of law.

### V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 65) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** with respect to Richardson's claim of prima facie tort, which is **DISMISSED**; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that Richardson's request that the court strike from the record, pursuant to 42 U.S.C. § 290dd-2, the portions of defendants' motion

referencing Richardson's history with drug abuse, (Dkt. No. 79 at 17-18), is

**DENIED**; and it is further

      **ORDERED** that this case is deemed trial ready and the court, in due

course, shall issue a trial scheduling order; and it is further

      **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 4, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court